371 So.2d 294 (1979)
James E. FRANKLIN, Plaintiff-Appellant,
v.
BRIDGES LOAN & INVESTMENT CO., INC., Defendant-Appellee.
No. 13844.
Court of Appeal of Louisiana, Second Circuit.
May 1, 1979.
James E. Franklin, Jr., Shreveport, for plaintiff-appellant.
D. G. Tyler, Shreveport, for defendant-appellee.
Before BOLIN, MARVIN and JONES, JJ.
JONES, Judge.
Plaintiff, James E. Franklin, appeals a judgment sustaining defendant's, Bridges Loan & Investment Co., Inc., peremptory exception of one year prescription and dismissing plaintiff's suit for damages caused by defendant's loss of plaintiff's collateral mortgage note. We affirm.
On July 23, 1972, plaintiff executed a collateral mortgage on his property securing *295 an any future holder demand note in the amount of $20,500. Plaintiff forwarded to defendant what he called an interim loan package containing a certified copy of the recorded mortgage, the collateral mortgage note, a mortgage certificate, tax certificate, copy of survey, affidavit of no new construction and title opinion. Plaintiff then decided not to build upon the mortgaged property and obtained no loan from defendant.
Plaintiff filed this suit for damages more than one year after he discovered defendant had lost the collateral mortgage note. The trial court held plaintiff's cause of action based upon defendant's negligence was in tort and had prescribed.[1]
The issue is does plaintiff's petition state a contractual claim for damages and for this reason is not subject to the tort prescription of one year.[2]
A party having an action for damages in contract and tort may elect which remedy he will pursue and the allegations of his petition taken as a whole will determine the character of plaintiff's action. Federal Ins. Co. v. Ins. Co. of North America, 262 La. 509, 263 So.2d 871 (1972); LaFleur v. Brown, 223 La. 976, 67 So.2d 556 (1953).
Plaintiff in brief contends defendant had an obligation to return the collateral mortgage note by virtue of a contractual relation entered between plaintiff and defendant wherein defendant was obligated to make the loan if plaintiff so desired.
In order for the plaintiff's cause of action to be governed by a ten year prescription period, it is essential that it be based upon the contract of pledge because that is the nature of the contract which results from the borrowing of money secured by a collateral note. "The pledge is a contract by which one debtor gives something to his creditor as security for his debt." C.C. Art. 3133. The pledgee is liable for loss of the thing pledged occasioned by his fault and the prescriptive period of ten years would be applicable for breach of this contractual obligation.[3]
The only allegations in plaintiff's petition directly relating to a loan from the defendant to be secured by the lost collateral note are:
"Thereafter, plaintiff, James E. Franklin, decided not to build on the lot and no draws were ever made on the interim loan.
That plaintiff, prior to the loan, had followed the same procedure on approximately fifteen to twenty-five loans. . ." Tr. 6, 7, p. 3
Plaintiff makes no allegation, nor is there any evidence in the record, that the defendant ever promised him a loan, nor was there any hand note prepared and executed evidencing such a loan to be secured by the now lost collateral note.
In the decision of Thrift Funds Canal, Inc. v. Foy, 261 La. 573, 260 So.2d 628, 630 (1972), the supreme court in discussing the collateral mortgage stated:
"A collateral mortgage is a mortgage designed, not to directly secure an existing debt, but to secure a mortgage note pledged as collateral security for a debt or a succession of debts. The mortgage is usually drawn in favor of future holders, *296 represented by a nominal mortgagee. For convenience in pledging, the companion promissory note is usually payable to bearer on demand. The maker may reissue the note from time to time. See LSA-R.S. 7:9; LiRocchi v. Keen, 242 La. 111, 134 So.2d 893 (1961); Mente & Co. v. Levy, 160 La. 496, 107 So. 318 (1926); Odom v. Cherokee Homes, Inc., La.App., 165 So.2d 855 (1964), cert. den. 246 La. 867, 167 So.2d 677; Woodward, Louisiana Notarial Manual, § 5.11, p. 132; § 5.25, pp. 151-156 (1953); 25 La.L.Rev. 789, 792-793 (1965)."
In the decision of New Orleans Silversmiths, Inc. v. Toups, 261 So.2d 252, 254 (La.App. 4th Cir. 1972), the court recognized that the collateral mortgage becomes viable when the hand note is executed:
"Its legal efficacy against third persons is contemporaneous with the execution of the hand note for the payment of which it is given in pledge."
Neither the preparation and recordation of the collateral mortgage, nor the physical act of placing the collateral note and a certified copy of the mortgage in the hands of a possible lender, creates the contract of pledge. There must be a meeting of the minds between pledgor and pledgee concerning the transaction. The pledge is an accessorial obligation and normally cannot exist without a primary obligation.[4] This rule is subject to an exception[5] contained in C.C. Art. 3158.[6] The exception *297 has no application to the facts of this case because it only applies to a situation where a pledged collateral note remains in the hands of the pledgee after the obligation which it was given to secure has been extinguished by payment.
The plaintiff executed the lost note on July 13, 1972 and delivered it to defendant the same day. There is in the record a ledger sheet showing plaintiff's loan transactions with defendant during the year of 1972 and it reflects that during the five month period from April 13 until September 12 plaintiff owed defendant no sums of money and the account was entirely dormant. There was no indication on this ledger sheet or otherwise in the record of defendant having any contractual rights related to the lost note. The delivery of the note and other documents in the "interim loan package" did not create any contractual relationship between plaintiff and defendant. The very most these circumstances establish is preparation on the part of the plaintiff to borrow money from the defendant and preparation to pledge as security for the loan the collateral mortgage note which was later lost.
The trial judge was correct in holding that plaintiff's cause of action was in tort and prescribed.
AFFIRMED at appellant's cost.
NOTES
[1] C.C. Art. 3536"The following actions are also prescribed by one year: That for injurious words, whether verbal or written, and that for damages caused by animals, or resulting from offenses or quasi offenses.

That which a possessor may institute, to have himself maintained or restored to his possession, when he has been disturbed or evicted.
That for the delivery of merchandise or other effects, shipped on board any kind of vessels.
That for damage sustained by merchandise on board ships, or which may have happened by ships running foul of each other."
[2] C.C. Art. 3544"In general, all personal actions, except those before enumerated, are prescribed by ten years."
[3] C.C. Art. 3167"The creditor is answerable agreeably to the rules which have been established under the title: Of Conventional Obligations, for the loss or decay of the pledge which may happen through his fault.

On his part, the debtor is bound to pay to the creditor all the useful and necessary expenses which the latter has made for the preservation of the pledge."
[4] C.C. Art. 1771"A principal contract is one entered into by both parties, on their own accounts, or in the several qualities they assume. An accessory contract is made for assuring the performance of a prior contract, either by the same parties or by others; such as suretyship, mortgage and pledge."

C.C. Art. 3136"Every lawful obligation may be enforced by the auxiliary obligation of pledge."
C.C. Art. 3138"If the obligation is null, so also is the pledge."
[5] Once the initial principal obligation to repay evidenced by a hand note has been created, C.C. Art. 3158 contemplates if the parties agreed at the time of the pledge that the collateral mortgage note would secure future advances and new or additional loans, the pledge will remain in existence although the initial debt has been extinguished and there is no principal obligation existing as long as the collateral mortgage note remains in the hands of the pledgee. Acadiana Bank v. Foreman, 352 So.2d 674 (La.1977).

In New Orleans Silversmiths, Inc. v. Toups, 261 So.2d 252, 254 (La.App. 4th Cir. 1972) the court stated: "By Act 290 of 1952, the Legislature amended this article to impart a retrospective effect to all subsequent advances to the date of the initial loan, provided: (a) the initial pledge was properly confected; (b) each succeeding loan was specifically secured by a pledge of the instrument; (c) the parties had mutually agreed at the time of the original pledge that it would also secure any obligations or liabilities of the pledgor then existing or thereafter arising to the limit of the pledge; and (d) all of the aforegoing being subject to the pledged instrument continuously remaining in the hands of the pledgee and the parties acting in good faith at all times. The retroactive effect created by this statute may, by mutual consent, be made applicable not only to renewal of the primary loan but to new or additional loans, even though the original obligation has been fully paid. [emphasis added] Further, such renewals, subsequent loans, additional advances, or other obligations shall be secured by the collateral pledged to the same extent as if made at the time the initial loan and pledge was executed."
[6] C.C. Art. 3158"But this privilege shall take place against third persons only in case the pledge is proved by some written instrument, in which shall be stated the amount of the debt intended to be secured thereby, and the species and nature of the thing given in pledge; or the description of the thing pledged may be contained in a list or statement annexed to the instrument of pledge and giving its number, weight or descriptive marks.

When a debtor wishes to pledge promissory notes, bills of exchange, bills of lading, stocks, bonds, policies of life insurance, or written obligations of any kind, he shall deliver to the creditor the notes, bills of exchange, bills of lading, stocks, bonds, policies of life insurance, or other written obligations, so pledged, and such pledge so made, except as hereinafter provided with regard to life insurance policies, shall without further formalities be valid as well against third persons as against the pledger thereof, if made in good faith, provided that where the pledge of instruments not negotiable, the debtor must be notified thereof, it being understood that no notification is required in the case of the pledge of certificates of corporation stock. All pledges may be made by private writing of any kind if only the intention to pledge be shown in writing, but all pledges, except of a life insurance policy in favor of the insurer, must be accompanied by actual delivery..... it is further provided that whenever a pledge of any instrument or item of the kind listed in this article is made to secure a particular loan or debt, or to secure advances to be made up to a certain amount, and, if so desired or provided, to secure any other obligations or liabilities of the pledger to the pledgee, then existing or thereafter arising, up to the limit of the pledge, and the pledged instrument or item remains and has remained in the hands of the pledgee, the instrument or item may remain in pledge to the pledgee or, without withdrawal from the hands of the pledgee, be repledged to the pledgee to secure at any time any renewal or renewals of the original loan or any part thereof or any new or additional loans, even though the original loan has been reduced or paid, up to the total limit which it was agreed should be secured by the pledge, and, if so desired or provided, to secure any other obligations or liabilities of the pledger to the pledgee, then existing or thereafter arising, up to the limit of the pledge, without any added notification or other formality, and the pledge shall be valid as well against third persons as against the pledger thereof, if made in good faith; and such renewals, additional loans and advances or other obligations or liabilities shall be secured by the collateral to the same extent as if they came into existence when the instrument or item was originally pledged and the pledge was made to secure them; . . ."