In re FCH COMPANIES, INC., Debtor.

**E.F. HUTTON CORPORATION, Plaintiff,**

v.

**FCH COMPANIES, INC., Defendant.**

**Bankruptcy No. 484–00758–LO. Adv. No. 485–0036.**

United States Bankruptcy Court, W.D. Louisiana.

Oct. 24, 1985.

John Fricke and Frank M. Adkins, New Orleans, La., for Hutton.

John W. Munsterman, Alexandria, La., for Security.

Gerald C. de Launay, Lafayette, La., for debtor.

Hugh W. Thistlethwaite, Jr., Opelousas, La., trustee.

## OPINION AND ORDER

RODNEY BERNARD, Jr., Bankruptcy Judge.

This matter came before the court for trial on August 20, 1985, and is, its caption notwithstanding, an action between two creditors, E.F. Hutton Corporation [Hutton] and Security First National Bank [Security], to rank their liens on six pieces of heavy equipment. (Reference is made to the complaint herein for a more detailed description of that equipment). Hutton was represented by Mr. John Fricke, Esquire and Mr. Frank M. Adkins, Esquire. Security was represented by Mr. John W. Munsterman, Esquire. Also appearing were Mr. Gerald C. de Launay, Esquire for the debtor, and the trustee, Hugh W. Thistlethwaite, Jr.

The facts giving rise to the controversy between these two creditors are complex, and are set forth as concisely as possible below.

On February 18, 1982, FCH, the debtor herein, executed a collateral mortgage and note in favor of Security. That collateral mortgage did not involve the equipment at issue here. Subsequently, on three occasions in February and March of 1982, hand notes were given to Security by FCH. Each of those notes contained a pledge notation on the reverse side stating that the note and mortgage of February 18 were pledged as collateral. On June 25, 1982 those three notes were consolidated and renewed in a new hand note, which contained the same pledge notation.

On July 23, 1982 Security recorded a second collateral note and mortgage. The equipment at issue here was described as collateral in that mortgage. On that same day, FCH executed a note and granted a chattel mortgage to Hutton which secured the purchase price of the above-mentioned equipment. The transaction was to enable FCH to purchase the equipment, which was then being leased. The funds were disbursed to the seller, Boyce Machinery Company, which marked the invoices "paid". Hutton, rather than the debtor, retained those invoices, and the mortgage was recorded on July 30, 1982.

It was not until October 15, 1982, that a hand note was given by FCH to Security which contained a pledge of the July 23 collateral note and mortgage. Subsequently, one advance and one renewal took place, each evidenced by a hand note pledging the July 23 collateral mortgage as security. Thereafter, another collateral mortgage was executed on June 6, 1983, also describing the equipment, in question here, as collateral. The same procedure of executing hand notes containing pledges was followed with that collateral mortgage as well.

The primary issue here is one of priority, i.e. when did the respective liens become effective against third parties. In order to make that determination, a distinction in the types of security devices used by these two creditors must be made.

In Louisiana, there are generally three types of conventional mortgages. The ordinary mortgage secures a specific existing indebtedness. *South Lafourche Bank and Trust v. M/V Southern Star*, 582 F.Supp. 584 (E.D.La.1984). This is the type of mortgage Hutton holds. There is also a mortgage to secure future advances, which secures a debt not yet in existence. *South Lafourche, supra.* Finally, there is the collateral mortgage, which is the type Security holds. A collateral mortgage does not directly secure an existing debt, but secures a mortgage note which can be

pledged as security for a debt or succession of debts. It requires three documents: a collateral mortgage, a contemporaneously executed promissory or *"Ne Varietur"* note which is paraphed for identification with the mortgage, and a third note or series of notes which pledge the collateral note and mortgage as security. *Lafourche, supra.*

In an ordinary mortgage transaction, the note evidences the debt itself. However, in the collateral mortgage situation, both the note and mortgage represent the collateral, and are pledged as security. The debt is evidenced by another note or series of notes, which pledge the collateral note and mortgage. In other words, the instrument itself is security, and is in turn secured by the named collateral. The collateral mortgage note creates a fictitious indebtedness that can later be pledged for a real debt. *Texas Bank, supra. See also* Louisiana Civil Code Article 3281.

The importance of this distinction between ordinary and collateral mortgages is that while an ordinary mortgage is effective against third parties as of the date of recordation, *Acadiana Bank v. Foreman,* 352 So.2d 674 (La.1977), collateral mortgages are effective as to third parties only upon the date the mortgage was first pledged, even if the mortgage was recorded prior to that date. *South Lafourche, supra; Texas Bank v. Bozorg,* 457 So.2d 667 (La.1984); *Alaynick v. Jefferson Bank and Trust,* 451 So.2d 627 (La.App.1984); *Franklin v. Bridges Loan and Investment Co.,* 371 So.2d 294 (La.App.1979). That requirement arises from the contractual nature of the pledge. Since the collateral mortgage secures only that indebtedness which was contemplated in the contract of pledge, *Alaynick, supra, citing Durham v. First Guaranty Bank,* 331 So.2d 563 (La.App.1976), it follows that the mortgage can rank only from the date of the first pledge which it secured. *See also* La.Civ. Code Art. 3158.

Security argues first that the collateral mortgage note itself contains a pledge.

The relevant language in that mortgage is as follows:

> The mortgagor declares that the note herein described and this mortgage securing it are not given or issued in evidence of any specific debt but are intended and shall be used as collateral to secure payment of *existing indebtedness* and from time to time advances to be made hereafter by Mortgagee to Mortgagor, to secure which the within described note *may at any time be pledged* to the Security First National Bank. (Emphasis added.)

Security contends that the references to existing indebtedness makes this a pledge within the collateral mortgage itself, thus making the date of Security's ranking July 21, 1982. While that phrase may appear to be a pledge when taken out of context, there are several serious problems with that interpretation.

First, the language of the quoted paragraph, when read as a whole, clearly controverts Security's contention. The latter portion of that paragraph clearly states that the note and mortgage *may* be pledged. Such language is not consistent with an interpretation that there was a contemporaneous pledge. Further, when read as a whole the paragraph is basically a description of the usual use of a collateral mortgage, rather than a drastic departure from the norm. That paragraph states that the collateral note and mortgage may be pledged as needed—as additional security for existing indebtedness, or security for new advances. It does not itself contain a pledge.

In support of its contention, Security cites *Peoples Bank and Trust Company v. Campbell,* 374 So.2d 741 (La.App.1979), in which the court held that similar language in a collateral mortgage note was sufficient evidence of a contract of pledge. That case is inconsistent with the great majority of authority on this point, and is thus unpersuasive. In any case, this court finds that the paragraph quoted above is not sufficient evidence of a contract of pledge. Not only is the language itself ambiguous at

best, but the course of dealings between Security and FCH, both before and after the execution of collateral mortgage of July 23 indicates that a contract of pledge arose upon issuance of a hand note, not contemporaneously with the collateral mortgage. In addition, a contract of pledge requires a meeting of minds in order to form the contract. *Franklin, supra.* Thus, although the bank (through its officers) may have intended this language to constitute a pledge, there is absolutely no evidence that the debtor intended any such thing, especially given its prior course of dealing with the bank.

It is also worth noting that had the bank intended to acquire additional security for an existing debt, the collateral mortgage could have been drafted as an ordinary mortgage granting additional security. Alternatively, the bank could have had the debtor execute a traditional hand note at the same time as the collateral mortgage in order to secure existing indebtedness. In short, this court is convinced that the collateral mortgage contained no pledge. Therefore, the first pledge of that mortgage having taken place on October 16, 1982, and the Hutton mortgage having been recorded on July 20, 1982, the Hutton mortgage primes the Security mortgage.

Hutton also argues that it has a vendor's privilege, acquired from the seller of the equipment in question. Because of the foregoing, it is unnecessary to delve into that murky area of the law. Therefore, having determined that Hutton's interest in the equipment in question here primes that of Security, an appropriate judgment will be signed upon submission.