564 So.2d 1274 (1990)
Beverly JONES, et al.
v.
Ronald GILLEN, et al.
No. 89-CA-725.
Court of Appeals of Louisiana, Fifth Circuit.
June 6, 1990.
Rehearing Denied July 17, 1990.
*1276 Leefe, Donelon, Donelon & Koehler, Clement P. Donelon, Metairie, for Beverly Jones, plaintiff-appellee/appellant.
Kelly and Davenport, G. Frederick Kelly, III, New Orleans, for Land-O-Pines, Inc., defendant-appellant/appellee.
Ward & Clesi, Jan P. Jumonville, New Orleans, for Karen Savoie, Lawrence Savoie and State Farm Fire and Cas. Co., defendants-appellees.
Before CHEHARDY, BOWES and GAUDIN, JJ.
CHEHARDY, Chief Judge.
Defendant Land-O-Pines Campgrounds, Inc. (L.O.P.), and plaintiff, Beverly Jones, appeal from a judgment pursuant to a jury verdict in a case involving the drowning death of plaintiff's 14-year-old son. The drowning occurred in the Simalusa Creek, which flows behind property leased by L.O.P. from Ronald Gillen, Aline Gillen, Richard Gillen, Jr., and Janet Gillen Robinson.
*1277 The other defendants, Lawrence and Karen Savoie, and their homeowner insurer, State Farm Fire and Casualty Company (State Farm), also requested a modification of the judgment. However, they neither appealed nor answered the appeal, and we are precluded from addressing any claim for modification by a party who has failed to file an appeal or answer the appeal. LSA-C.C.P. arts. 2082 and 2133; Reilly v. Gene Ducote Volkswagen, Inc., 549 So.2d 428 (La.App. 5 Cir.1989).
In its appeal L.O.P. asserts the jury erred in finding it strictly liable for the death of Richard Jones, Jr.
In plaintiffs appeal, it is urged the trial court erred in issuing an amended judgment which substantively altered the original judgment. Plaintiff also contends the jury erred in its apportionment of fault and seeks to have the fault assessed against the deceased reduced or eliminated.
The deceased herein, Richard Jones, Jr. (Richie), joined his friend Chad Savoie and Chad's family on a weekend camping trip to L.O.P. Campgrounds in May 1981. The Savoies regularly rented a campsite at the campgrounds, a commercial enterprise, which provided amenities including a water slide, game room, swimming pool and "beautiful beaches on river" as presented in the defendant's advertising brochures.
The Simalusa Creek, the "river" referred to in the defendant's brochures, meanders through the property leased by defendant. It is shallow for the most part in that arearanging from several inches to a couple of feet deepexcept for one area where the creek had created a hole graduating to a depth of 20 to 30 feet.
Area residents and campers used the deep water area as a swimming hole. Someone had also constructed a cable and pulley apparatus across the creek, which dipped down over the hole from which campers swung to propel themselves into the deep water.
At the time the accident occurred, the campgrounds swimming pool was closed for repairs. Although no restrictions were placed on the campers as to swimming in the creek, no lifeguards were provided as they were for the pool. "Swim at your own risk" signs were posted, however, on the paths to the creek and on the beach.
On the day after the arrival of the Savoie family and Richie (May 31, 1981), Richie, Chad, Chad's brother and his cousin discovered the pool was closed, so they informed Chad's parents, Larry and Karen Savoie, that they were going to the creek to swim. The Savoies consented and told the boys they (Larry and Karen Savoie) would join them later.
Richie and Chad were "good swimmers". They played in the water for a while and then apparently decided to try to touch the bottom of the swimming hole. At the time there were approximately 30 people in the area. After about the fourth dive, Richie failed to resurface. A search ensued and Richie's body was found at the bottom of the hole by Bruce Albert, a camper who had scuba gear with him.
The child's parents subsequently filed a lawsuit against numerous parties for Richie's wrongful death. The State of Louisiana; the Parish of St. Tammany; and the Gillen family, owners and lessors of the campground property, were eventually dismissed from the suit. (See: Jones v. Gillen, 504 So.2d 575 [La.App. 5 Cir. 1987], writ denied 508 So.2d 86 [La.1987], as to the dismissal of the Gillen family.)
Trial against L.O.P.; Morris Parnell and Roy Smith, co-owners of the campgrounds corporation; the Savoies; and the Savoies' homeowner's insurer, State Farm Fire and Casualty Company, commenced on March 14, 1989.[1] On Saturday, March 18, 1989, the jury returned a verdict in the amount of $145,000 in plaintiff's favor. In the verdict the jury found the Savoies 5% negligent, L.O.P. 20% at fault, and the deceased child 75% comparatively negligent. A judgment was thereafter rendered on March 21, 1989.
*1278 On March 28, 1989, plaintiff filed a motion for judgment notwithstanding the verdict contesting the fault percentage assessed against Richie. On April 28 a hearing on the motion was held. No judgment was rendered at that time.
The Savoies and State Farm subsequently filed a motion to amend the judgment on the basis the judgment did not conform to the jury verdict. That was filed on May 5, 1989. They did not file an appeal of that judgment.
Defendant L.O.P. filed a motion for suspensive appeal on May 26, 1989, which was granted on June 9, 1989. On June 14, 1989 the trial judge rendered a judgment on the motion for J.N.O.V. denying the motion.
Plaintiff thereafter filed her motion for appeal on August 11, 1989. She then filed a motion to dismiss the suspensive appeal of defendant L.O.P. for failure to post bond. That motion was filed on August 16, 1989. On August 17, 1989 L.O.P. filed for a devolutive appeal in the event its suspensive appeal was dismissed. No action was thereafter taken in regard to the dismissal of defendant's suspensive appeal.
On September 9, 1989, plaintiff motioned the court to dismiss her appeal for unknown reasons. The motion was granted on that day and plaintiff's appeal was dismissed.
On September 15 and 29 of 1989, the trial judge held hearings on the motion to amend filed in May by the Savoies and State Farm. The matter was taken under advisement. On October 1989, the motion was granted and the judgment reformed to conform to the jury verdict. It also reapportioned costs, dismissed Parnell and Smith, added an expert, and increased the fees previously awarded to three other experts.
After the second judgment was rendered, L.O.P. and plaintiff perfected appeals. No appeal was filed by the Savoies and/or State Farm from that judgment either.
On November 10, 1989, the record was lodged in this court. However, another motion to dismiss defendant's appeal was subsequently filed by plaintiff in this court. The disposition of the motion to dismiss was referred to the merits and we will address those issues first.
Plaintiff alleges the appeal should be dismissed for two reasons. First, she contends defendant judicially confessed, or admitted, the law and evidence supported the jury verdict in defendant's opposition memorandum to plaintiff's motion for judgment notwithstanding the verdict (J.N.O.V.). She secondly asserts the appeal should be dismissed because defendant failed to file its suspensive appeal bond, as required by LSA-C.C.P. art. 2123.
In regard to plaintiff's first argument, a party may be precluded from appealing an issue or from contesting a fact if, under LSA-C.C.P. art. 2085, he confessed to or acquiesced in the judgment. Under LSA-C.C. art. 1853 he cannot contest a fact or issue if he has judicially admitted it during the proceedings.
The former article, C.C.P. art 2085, provides:
"An appeal cannot be taken by a party who confessed judgment in the proceedings in the trial court or who voluntarily and unconditionally acquiesced in a judgment rendered against him. Confession of or acquiescence in part of a divisible judgment or in a favorable part of an indivisible judgment does not preclude an appeal as to other parts of such judgment."
In this respect, the confession or acquiescence to preclude an appeal need not be in writing or any particular form; however, it must consist of an admission by a party in the trial court proceedings of the validity of his opponent's claim in such a way as to leave no issue to be tried. Martin v. Holzer Sheet Metal Works, Inc., 376 So.2d 500 (La.1979). Such admissions have been held to include consent judgments and stipulations by the parties. (See: Martin v. Holzer Sheet Metal Works, Inc., supra; Armstrong v. Armstrong, 384 So.2d 566 (La. App. 4 Cir.1980); Davis v. Hooker Chemical & Plastic Corp., 394 So.2d 802 (La.App. 4 Cir.1981; Collins v. Collins, 485 So.2d 956 (La.App. 5 Cir.1986)). They generally do not include statements made through *1279 necessity to protect a right, where there was no intent to recognize the validity of the other party's claim based on the circumstances, or where the other party failed to respond to a pleading. (See: Napoli v. Napoli, 536 So.2d 839 (La.App. 1 Cir.1988); CCH, Inc. v. Heard, 410 So.2d 1283 (La. App. 3 Cir.1982); Olivier v. Comeaux, 498 So.2d 1135 (La.App. 3 Cir.1986); Vincent v. Lewis, 275 So.2d 414 (La.App. 3 Cir.1973)).
In regard to a judicial confession or admission, C.C. art. 1853 states:
"A judicial confession is a declaration made by a party in a judicial proceeding. That confession constitutes full proof against the party who made it.
"A judicial confession is indivisible and it may be revoked only on the ground of error of fact."
Under this article (and its predecessor, C.C. art. 2291, repealed, vacated and reenacted by Acts 1984, No. 331, effective January 1, 1985), the statement constituting a judicial admission must be the express acknowledgement of an adverse fact, the effect of which is to waive evidence as to the subject of the admission or to withdraw the matter from issue. Cheatham v. City of New Orleans, 378 So.2d 369 (La.1979). For these effects to be imposed, however, the other party must have been led to believe the fact was not at issue or he must have relied on the statement to his detriment. Cheatham v. City of New Orleans, supra; Crawford v. Deshotels, 359 So.2d 118 (La. 1978); Lewis v. Willamette Industries, Inc., 499 So.2d 506 (La.App. 2 Cir.1986). Otherwise the party making the admission can withdraw the statement. Crawford v. Deshotels, supra; Lewis v. Willamette Industries, Inc., supra.
In this case, defendant contested its liability vigorously throughout the proceedings leading to trial. Following the trial and the jury verdict plaintiff filed her motion for J.N.O.V. to specifically contest the percentages of fault and in addition to urge a further finding that defendant was negligent, as well as strictly liable. Defendant responded with a memorandum in opposition to the motion in which it stated the following:
It is submitted that the jury's verdict in this matter, though a compromise verdict, is supported by the law and evidence, and plaintiffs motion [should be] denied. If anything, the degree of negligence attributable to Richard Jones, Jr. should be increased to 100%." (Emphasis added.)
It subsequently filed its appeal.
The statement made by defendant does not meet the criteria set forth in C.C.P. art. 2085, C.C. art. 1853 or the cases interpreting them. It was made through the necessity of opposing plaintiff's motion and, as can be seen by the last sentence of the quote, there was no intent to accede to the verdict insofar as it adversely affected defendant. In addition there was no showing by plaintiff that she relied on any part of the statement to her detriment. Thus, we do not find the appeal should be dismissed based on the first of plaintiff's arguments.
Plaintiff argues secondly the appeal should be dismissed because defendant failed to file an appeal bond after being granted a suspensive appeal. This failure, plaintiff argues, deprives this court of jurisdiction.
The failure to file a suspensive appeal bond is not a jurisdictional defect, but an ordinary one which must be raised in a timely motion to dismiss. Schenker v. Watkins, 521 So.2d 686 (La.App. 1 Cir. 1988). However, since the elimination of the requirement of a bond for devolutive appeals, the jurisprudence has consistently held that while the suspensive appeal must be dismissed for failure to file the required bond, the appeal should be converted to a devolutive appeal as long as the appellant has met those requirements. Dusenberry v. Andrus, 510 So.2d 386 (La.App. 1 Cir. 1987); The Research Group, Inc. v. Sharp, 430 So.2d 165 (La.App. 2 Cir.1983); Whitehead v. Fireman's Fund Ins. Co., 520 So.2d 1324 (La.App. 3 Cir.1988); Corroon & Black of Louisiana, Inc. v. O'Regan, 478 So.2d 1367 (La.App. 4 Cir.1985). See also Peters v. Life General Security Insurance Co., 392 So.2d 1054 (La.1981).
*1280 Defendant filed its suspensive appeal on May 26, 1989. The appeal was granted on June 9, 1989, but defendant never filed the required bond, resulting in plaintiffs' timely motion to dismiss the appeal. Thus the suspensive appeal must be dismissed. However, the appeal first filed as suspensive meets the requirements for perfection of a devolutive appeal, and furthermore defendant filed a timely devolutive appeal in the trial court. C.C.P. art. 2087. Consequently, we maintain the appeal as devolutive.
We next address the validity of the amended judgment since a decision on this issue will affect our jurisdiction to entertain the appeals from that judgment, and we are obliged to recognize our lack of jurisdiction if it exists. Guilliot v. City of Kenner, 326 So.2d 359 (La.1976); LSA-C. CP. art. 2162. Furthermore, this issue affects the plaintiff's appeal. If the judgment is invalid, plaintiff will not be properly before this court since she dismissed her appeal of the first judgment, a motion for appeal from an invalid judgment is considered untimely, and we lack jurisdiction to hear an untimely appeal. Duffy v. Duffy, 506 So.2d 225 (La.App. 5 Cir.1987).
LSA-C.C.P. art. 1951 provides that a final judgment may be amended by the trial court at any time on its own motion or the motion of any party to alter phraseology, but not the substance, or to correct errors of calculation. The remedy to otherwise amend a final judgment is by a timely motion for new trial or a timely appeal. Villaume v. Villaume, 363 So.2d 448 (La. 1978); Borg-Warner A. Corp. v. Whitlow Tr. Ctr., 508 So.2d 857 (La.App. 5 Cir.1987). An amended judgment rendered pursuant to an untimely motion for new trial or without the granting of a new trial is void. Duffy v. Duffy, supra; Edwin M. Jones Oil Co., Inc. v. Cobb, 469 So.2d 357 (La.App. 2 Cir.1985).
A substantive change of a final judgment is one that neither adds to nor takes something from the judgment. Villaume v. Villaume, supra. Some examples of substantive changes are name changesTeague v. Barnes, 519 So.2d 817 (La.App. 5 Cir.1988), and an added judgment on a reconventional demandErnst v. Bassett, 521 So.2d 414 (La.App. 5 Cir.1988).
The final judgment referred to in C.C.P. art. 1951 and in the jurisprudence is a written judgment signed by the trial judge. Oral comments made by the trial judge do not constitute a final judgment. Hebert v. Hebert, 351 So.2d 1199 (La.1977).
In this case, the jury awarded plaintiff $145,000 and found the deceased 75% at fault, L.O.P. 20% at fault and the Savoies 5% at fault. The initial judgment stated L.O.P. and the Savoies were liable in solido for the amount of $36,000 (the amount remaining after deducting the deceased's proportion of fault). It also awarded fees to three experts and cast State Farm for all expert fees and costs.
The second judgment, rendered after two hearings on State Farm's motion to amend the judgment, apportioned the award of $145,000 into the catagories of compensation due to each plaintiff; restated the jury's finding as to the percentages of fault; ordered judgment against State Farm for $7,250; and cast L.O.P. for the amount of $29,000. It also dismissed Smith and Parnell (the sole shareholders of the campgrounds corporation), reset the expert fees by raising the amounts to $100 more than originally awarded and added an expert inadvertently omitted from the first judgment. It further cast State Farm for all jury costs and divided the other costs between State Farm and L.O.P.
The changes made by the trial judge, particularly in respect to the quantum in the case, constituted a substantive change of a final judgment. Since the substantive change was not made pursuant to a timely motion for new trial or a timely appeal, the second judgement is invalid. As a consequence of these findings, we lack jurisdiction to entertain this appeal by plaintiff because it was an appeal from an invalid judgment and is thus untimely. See Duffy v. Duffy, supra.
In L.O.P.'s appeal, it asserts that the jury erred in finding it strictly liable for the drowning death of Richard Jones, Jr. In *1281 this respect it contends that the death occurred on property adjacent to the property leased by it from the Gillen family and, as such, was not within the control or custody of L.O.P. as required for a finding of strict liability. In further support of this contention, L.O.P. argues that it had neither the authority nor capability to fill in the hole, fence around the hole, or to any way restrict anyone's access to that particular swimming hole.
Plaintiff argues that strict liability applies because under Article 2317 strict liability can be imposed upon one who has either physical custody of an unreasonably dangerous thing or upon one who avails himself of an unreasonably dangerous thing, citing Ross v. LaCoste de Monterville, 502 So.2d 1026 (La.1987). In this regard, plaintiff asserts that the testimony of L.O.P.'s president, Roy Smith, showed that he exercised some supervision over the area by periodically removing the pulley and cables that the campers stretched across the river to jump from into the deep hole. In addition, plaintiff asserts that L.O.P. promoted the beach area on the river as one of the features of the campgrounds. Plaintiff also contends that the campers used that portion of the river not knowing that portion of the river, including the hole, did not belong to L.O.P. They point out the lack of boundaries marking the perimeters of the campground property and the wooded, rural nature of the campground area.
Under LSA-C.C. art. 2317 in order to recover under strict liability, plaintiff must prove that the thing which caused the damage was in the care or custody of defendant, the existence of a defect or vice of the thing and that the damage was caused by the defect or vice. Loescher v. Parr, 324 So.2d 441 (La.1975); Landry v. State, 495 So.2d 1284 (La. 1986); Tracy v. Jefferson Parish, 523 So.2d 266 (La.App. 5 Cir. 1988). Defenses that are available to the owner or custodian of a defective thing which causes injury are victim fault, fault of a third party, or irresistable force.
In this case the evidence established that L.O.P. used the existence of the river running alongside its leased property in its advertising campaign. It did not disassociate itself in any way from the area of the deep hole nor did it provide boundaries across the river to indicate its disassociation from the area. The evidence further established that the president of L.O.P. was well aware that the campers used that area of the river as a swimming hole and made no effort to discourage such use except by the placement of "swim at your own risk" signs on the pathways to the beach. Rather than indicating a lack of control of custody over the area, it is our opinion that the warning signs simply indicated that the campgrounds had not provided a life guard along the river. Furthermore, the evidence showed that Roy Smith knew of and periodically removed the pulley and cable which he apparently considered a dangerous apparatus.
A trial court's factual findings are given great weight and on appellate review may not be modified absent a finding of manifest error. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). After reviewing the evidence in this case, we find no manifest error in the findings by the jury that the hole in which the Jones boy drowned was in the custody and control of the defendant L.O.P.
Defendant next asserts that the strict liability finding was erroneous because the hole did not constitute a defect within the meaning of strict liability. It contends the depth of the water and its limited visibility do not constitute an unusual risk of harm as required for a finding of a defect within the meaning of strict liability.
Plaintiff, on the other hand, contends that the testimony of William Lloyd, an expert in the field of aquatic safety and the field of sport psychology, as well as the testimony of Dr. Leighton Stamps, a child psychologist, showed that the depth of the water, the murkiness of the water and the age of the child combined to create an unreasonable risk of harm sufficient for a finding of strict liability.
In order for a thing to be considered defective within the meaning of *1282 strict liability under C.C. art. 2317, it must create an unreasonable risk of harm. Loescher, supra. In determining whether the risk of harm is unreasonable, the court must weigh the magnitude and the probability of injury against the burden of preventing the injury and in applying the law to the facts of each particular case, the court must consider the moral, social and economic values, as well as the ideal of justice, in reaching an intelligent and responsible decision. Entrevia v. Hood, 427 So.2d 1146 (La.1983). In this respect, the key word is "unreasonable" and the plaintiffs must show that the risk created was unreasonable under all the circumstances. Entrevia, supra.
In this case the experts, Mr. Lloyd and Dr. Stamps, both concluded that the water hole was hazardous. The aquatics expert, Mr. Lloyd, indicated that the depth of the water and the fact that you could not see more than a foot or two beyond its surface made the swimming hole unsafe. He further testified that the hole presented a natural invitation to swimmers.
Dr. Stamps was qualified as an expert in child psychology. He testified that 14year-old children should be supervised when they are swimming in an area where the depth of the water reaches 20 to 25 feet. He further testified that the appellant's "swim at your own risk" signs would have little meaning to a 14-year-old.
The evidence showed that L.O.P. knew that the swimming hole presented a danger because there was an acknowledgment from Mr. Smith that he knew that someone had drowned in the hole previously. We furthermore note that even defendant acknowledges that had there been a life guard on duty he would not have been able to save the child's life because of the depth and the lack of visibility in the hole. Under these circumstances we find that the jury did not err in finding a defect existed within the meaning of strict liability.
Accordingly, the judgment of the trial court is hereby affirmed. Costs of this appeal are to be paid by appellant Land-Pines Campgrounds, Inc.
AFFIRMED.
NOTES
[1] Plaintiff Richard A. Jones, Sr., the deceased's father, died during pendency of the suit. His wife was properly substituted for him in her capacity as administrix of his succession.