584 So.2d 1181 (1991)
Weeland L. HYDE
v.
HIBERNIA NATIONAL BANK IN JEFFERSON PARISH and Credit Bureau ServicesNew Orleans, d/b/a Chilton Corp.
No. 91-CA-122.
Court of Appeal of Louisiana, Fifth Circuit.
July 30, 1991.
Rehearing Granted September 18, 1991.
*1182 Favret, Favret, Demarest & Russo, Edward J. Rivera, New Orleans, for defendant-appellant.
Poindexter & Oxner, Vallerie Oxner, New Orleans, for plaintiff-appellee.
Before DUFRESNE and BOWES, JJ., and FINK, J. Pro Tem.
ELORA C. FINK, Judge Pro Tem.
This appeal arises from a judgment in favor of plaintiff, Weeland L. Hyde, and against defendant Hibernia National Bank in Jefferson Parish (Hibernia).[1] The judgment was for damages in the amount of $10,000 in a case involving the proceeds from the payment of a pledged promissory note. We affirm, for the following reasons.
At issue is whether Hibernia, through its predecessor First Metropolitan Bank, improperly used $30,000 of the proceeds from the payment of a $90,000 pledged promissory note to infuse capital into the pledgors' corporation. Hibernia asserts that the trial judge erred because there was no valid pledge agreement between Hyde and the bank and that any claim for tortious conversion has prescribed. Alternatively, the bank asserts that it had contractual authority to inject the cash under the loan terms and that Hyde ratified the actions of the bank.

FACTS The testimony established that Hyde was 25% shareholder in the Freshness Corporation, a service outlet for Wuv's, a hamburger fast food restaurant. The other shareholders were Stewart Kepper Sr., Stewart Kepper Jr., and (presumably) Norman Buckner (whose name was not mentioned *1183 in the testimony but who co-signed the note to the bank).
In order to obtain working capital for the corporation, in the latter part of 1978 the corporation made a Small Business Administration (SBA) loan for $90,000 through First Metropolitan Bank. In October 1978 the loan was secured by a $90,000 continuing guaranty, executed by Hyde individually, and in December 1978 by a mortgage on a piece of immovable property owned by Hyde and the Keppers. The property was neither a corporate asset nor connected to the corporation in any manner.
The mortgaged property was sold for $120,000 in the latter part of December. On December 29, 1978, the purchasers, Mary Grace and R. Daniel Lambert, executed a promissory note in the amount of $90,000 as partial consideration for the sale. The note was made payable to Hyde, the Keppers, and their wives, and was secured by a mortgage on the property. It was then pledged to the bank as substitute collateral, since the property had originally secured the bank loan.
The Lambert note was paid off in August 1979. In anticipation of the event, Stewart Kepper Sr. instructed the bank by letter in July that $60,000 of the proceeds were to be divided among the partners, but $30,000 was to be injected into the corporation for working capital. The bank responded on August 2, 1979 that this allocation of the note's proceeds had been approved by its executive committee and by the SBA, which the bank was required to inform of such matters.
Hyde discovered this arrangement accidentally while visiting Kepper's office. He had not been consulted or told of this development previously. Hyde immediately sent a letter to the bank, objecting to the allocation of $30,000 into the corporation as additional capital because he felt the company was failing. He offered to substitute another piece of property and/or his one-third interest in the $60,000 as collateral instead. (He had directed that his share of the $60,000 be placed in a certificate of deposit.)
On August 23, 1979, Hyde received a letter from the bank refusing to reconsider the arrangement. The bank officer in charge of the accounts, Paul Bonitatibus, wrote that the SBA and the bank required the infusion of additional working capital. Hyde then pledged his $20,000 certificate of deposit on behalf of the corporate debt.
On October 29, 1979, still unhappy with the injection of the $30,000 into the corporate account, Hyde demanded through his attorney that the bank return his one-third portion of the $30,000, but to no avail. At the time of these events the loan was current. It was eventually paid off through other means and the businesses eventually closed down.
Suit in this matter was filed in 1987, alleging breach of the pledge agreement and wrongful conversion. After a trial on October 6, 1990, a judgment was rendered in Hyde's favor for $10,000. The bank has appealed.

APPLICABILITY OF PLEDGE AGREEMENT
Hibernia first argues the pledge of the Lambert note was not made by Hyde individually and thus he has no right to damages for breach of the pledge agreement. Hibernia asserts the pledge contract was between the corporation and the bank as evidenced by the document. We find the defendant is barred from raising this defense, for the following reasons.
A review of the record indicates the plaintiff stated, in Paragraph IX of his petition: "As security for the loan, petitioner pledged his individual one-third interest in a $90,000 promissory note to First Metropolitan Bank."
In Paragraph 5 of its answer, Hibernia states: "The allegations of paragraphs XIII and IX are admitted." This statement constitutes a judicial admission.
The judicial confession is a declaration made by a party in a pleading and is full proof against the party making it. LSA-C.C. art. 1853; Starns v. Emmons, 538 So.2d 275 (La.1989). The statement must be the express acknowledgment of an adverse fact and the effect of it is to waive evidence of it or to withdraw the matter *1184 from issue. Jones v. Gillen, 564 So.2d 1274 (La.App. 5 Cir.), writ denied, 568 So.2d 1081 (La.1990); Cheatham v. City of New Orleans, 378 So.2d 369 (La.1979). For these effects to be imposed, however, the other must have either relied on the declaration to his detriment or he must have been led to believe the admitted fact was not at issue. Jones v. Gillen, supra; Cheatham v. City of New Orleans, supra. Otherwise the statement may be withdrawn. C.C. art. 1853, Jones v. Gillen, supra.
In this case Hibernia admitted in its answer the fact it now attempts to deny. In addition, the bank never raised this issue in the trial court proceedings. Only on appeal has the bank raised the question as to whether Hyde as an individual pledged the note, as opposed to the corporation, so as to entitle him to bring an action for breach of contract. Hyde was certainly led to believe his status as a pledgor was not a fact issue. To allow Hibernia to argue the question now would be detrimental to Hyde's interest. We therefore find the fact that Hyde was a pledgor of the Lambert note was judicially admitted and we are precluded from addressing Hibernia's arguments in that regard.

PRESCRIPTION
Hibernia next asserts that if this Court determines that plaintiff's legal remedy lies in tort for conversion, such an action would have prescribed long before suit was filed in 1987.
An argument of untimeliness is properly raised by an exception of prescription. The exception may be filed in either the trial court or appellate court. LSA-C.C.P. art. 2163. Regardless of where the exception is filed it must be presented in a formal pleading and cannot be merely argued in brief. Lilly, Inc. v. Argus Technical System, 538 So.2d 717 (La.App. 4 Cir.1989); Cajun Electric Power Cooperative v. Owens-Corning Fiberglas Corporation, 580 So.2d 465 (La.App. 5 Cir.1991). Because it is an affirmative defense, it cannot be supplied by the court. LSA-C.C. art. 3452; LSA-C.C.P. art. 927.
In this case, Hibernia failed to file the exception in either the trial or appellate courts. Thus, it is not properly before us and under any circumstances cannot be considered.

BREACH OF PLEDGE AGREEMENT
In Hibernia's next argument it asserts it did not breach the contract of pledge by infusing the corporation with $30,000 of the proceeds of the note. Hibernia contends it had contractual authority to do so under the terms of the loan documents.
Paul Bonitatibus testified that, for authority to dispose of the proceeds of the pledged collateral, he relied on the loan document, on the requirements of the SBA, and on the custom of the industry. He pointed out the bank was not permitted by the SBA to release collateral without some considerationin this case, the $30,000 injection of capital, the subsequent purchase and pledge of Hyde's $20,000 C.D., and the reduction of the debt by $40,000. He explained the debt was still outstanding and Hyde's continuing guaranty had not been revoked. The bank officer stated the guaranty in particular allowed funds to be used as the bank saw fit and the other pertinent documents were silent in this regard.
Hyde argues that neither the language of the guaranty nor the elementary law of pledge allow the proceeds of a pledged item to be appropriated by or given away by the pledgee. He contends the latitude given the bank was to apply the funds to the debt, not to infuse a failing business with moneys owned by the pledgor. We agree.
A pledge is a contract whereby the item pledged stands as security for a debt. LSA-C.C. art. 3133. It is ancillary to a debt and invests the pledgee with the right to satisfy the debt by privilege and in preference to other creditors of the pledgor out of the pledged proceeds. LSA-C.C. art. 3157. Even if the pledgor defaults, the pledgee cannot dispose of the pledged item without agreement of the parties or until a judgment is obtained. LSA-C.C. art. 3165. Nothing in the law allows the pledgee to *1185 unilaterally dispose of the proceeds in any manner other than to satisfy the debt.
The guaranty signed by Hyde states:
The Bank may, without any notice to or consent of the undersigned, also apply all moneys received from the debtor [Freshness Corporation] and others, or from securities, as it may think best, without in any way being required to marshall securities or assets, and any such application of moneys shall not in any way alter, affect, limit or lessen the liability of the undersigned under this Guaranty. (Emphasis added).
We find no merit to the bank's contention that this language gave the bank the freedom to dispose of moneys paid to it in any way it chose. The implicit intent is that the bank use such funds in some way to reduce the debt. Thus, the application of the pledged proceeds as working capital for the corporation in this case was not a contemplated or permitted use of the $30,000, absent some agreement by all parties. Since no evidence was produced of such an agreement with Hyde, who was one-third owner of the funds, we find the bank improperly used his portion to infuse the corporation's operating account and such behavior constituted both a breach of the agreement and a wrongful conversion.

RATIFICATION
Finally, Hibernia argues Hyde ratified the act by failing to file suit until after the corporation went out of business and by pledging the C.D. after the infusion occurred. It contends Hyde should have taken some legal action at the time the infusion occurred in 1979.
The facts show Hyde objected to the bank's actions as soon as he was made aware of their intentions by letter. He testified he had a meeting with Bonitatibus and several telephone calls on the subject. He sought counsel and had a demand letter sent to Hibernia. All of his efforts were unsuccessful. The facts also show Hyde had, before the bank's actions, offered other collateral to substitute for the property that was sold. He was willing to pledge his C.D. for $20,000, but was not willing to put his funds from the note proceeds into the operating account of the corporation.
As to Hyde's failure to file some type of legal proceeding, we do not agree such drastic action was necessary to prevent a charge of ratification. An injunction proceeding may have been improper because it involved a monetary issue and a suit for damages may have been premature since the corporation was still viable at the time. Consequently, we find no merit to this allegation.

DECREE
For the foregoing reasons, the judgment of the district court is affirmed.
AFFIRMED.

ON REHEARING GRANTED
We grant rehearing to address an issue raised by Hibernia National Bank, defendant-appellant, in its application for rehearing.
In our original opinion, we refused to consider Hibernia's argument concerning prescription of Hyde's claim. We stated that Hibernia had failed to file an exception of prescription in a formal pleading; therefore, it was not properly before us and could not be considered.
In its rehearing application, Hibernia correctly points out that it had raised prescription as an affirmative defense in its answer to the plaintiff's petition. Accordingly, the exception was properly before us for consideration.
The petition herein was filed on July 17, 1987 and specifically alleged facts which the plaintiff asserted constituted a breach of contract. In addition, the plaintiff alleged that damages were due as well for unfair credit reporting.
The defendant, in answering the suit, contended that the facts alleged gave rise to an action for tortious conversion. Because the plaintiff learned of the conversion in 1979, the defendant contended the action was prescribed by the one-year prescriptive period for actions in tort.
*1186 "The pledge is a contract by which one debtor gives something to his creditor as a security for his debt." LSA-C.C. art. 3133. If the pledge is lost through the pledgee's fault, the pledgee is liable for its loss. See LSA-C.C. art. 3167. The prescriptive period in this case is ten years. LSA-C.C. art. 3167; Franklin v. Bridges Loan & Inv. Co., Inc., 371 So.2d 294 (La. App. 2 Cir.1979). Consequently, the suit herein is not prescribed.
Accordingly, the trial court correctly dismissed the exception of prescription.
Our original opinion on the other issues is reinstated and the judgment of the district court is affirmed.
AFFIRMED.
NOTES
[1] Credit Bureau Services New Orleans d/b/a Chilton Corporation was also named a defendant, but the record does not reflect that issue was ever joined as to Credit Bureau Services and it is not before us on this appeal.