JUDE G. GRAVOIS, Judge.
|2PIaintiff, Toni Nizzo, appeals two judgments of the trial court. The first judgment granted defendant, Phyllis Forest Wallace’s, motion for partial summary judgment, reasoning that Nizzo could not withdraw the parties’ previous stipulation that Wallace was in the course and scope of her employment at the time she allegedly committed a tort against Nizzo. The second judgment granted Wallace’s motion for summary judgment, effectively dismissing Nizzo’s tort suit against her, reasoning that under Louisiana Civil Code article 2320, Nizzo’s full release of Wallace’s employer from all liability resulting from an altercation between Wallace and Nizzo effectively also amounted to a full release of Wallace individually, even though Nizzo had specifically reserved all rights against Wallace individually in the release she executed in favor of Wallace’s employer. For the following reasons, we affirm.
| ¿FACTS AND PROCEDURAL HISTORY
This case arises out of an altercation that occurred between Toni Nizzo and Phyllis Forest Wallace on March 15, 2005 on the business premises of Renal Care Group, Inc., where both Nizzo and Wallace were employed as nurses. Apparently, Wallace became unhappy with her patient assignments for that particular day, got into an argument with Nizzo, and allegedly struck Nizzo, allegedly injuring her. Niz-zo filed suit against Wallace on January 30, 2006. On March 9, 2006, Nizzo filed a First Supplemental and Amending Petition, adding Renal Care Group, Inc. as a defendant, alleging that Wallace was in the course and scope of her employment with Renal Care Group at the time of the altercation, and that Renal Care Group was thus vicariously liable for the actions of Wallace under the doctrine of respondeat superior.[1] Wallace answered the First *163 Supplemental and Amending Petition, specifically admitting Nizzo’s allegations that she was in the course and scope of her employment with Renal Care Group at the time of the altercation. Nizzo later also brought Zurich American Insurance Company into this litigation, as insurer of Renal Care Group, alleging that Zurich would also be responsible for the vicarious liability of Renal Care Group, as employer of Wallace.
Prior to Nizzo’s later settlement with Renal Care Group and Zurich discussed below, Renal Care Group and Zurich moved for summary judgment to establish that Wallace was not in the course and scope of her employment with Renal Care Group at the time of the altercation. Niz-zo opposed that motion, arguing facts to show that Wallace was indeed in the course and scope of her 14employment with Renal Care Group at the time of the altercation, concluding that “The jurisprudence mandates a finding that the employer [Renal Care Group] is vicariously liable for the actions of Nurse Wallace because the dispute was employment-rooted.” That motion for summary judgment was denied after the trial court found genuine issues of material fact were outstanding.
Also, pertinent to this appeal, on February 11, 2008, the parties (plaintiff Nizzo and defendants Wallace, Renal Care Group, and Zurich) filed a Joint Pretrial Order. Therein, in subsection d) of Section F, which was entitled “Stipulations Regarding Facts and Exhibits,” Nizzo and Wallace clearly stipulated that the altercation between Nizzo and Wallace occurred during the course and scope of Nizzo and Wallace’s employment with Renal Care Group.[2]
In 2010, Nizzo reached settlements with Renal Care Group and Zurich, settling all alleged claims against them, including both her workers’ compensation and tort claims, for a total settlement amount of $262,696.89. As part of these settlements, Nizzo entered into written settlement and release agreements with Renal Care Group and Zurich, releasing all of her alleged claims against them in full, specifically reserving however any and all rights she had against Wallace individually.[3] Thereafter, in a subsequent Pre-Trial Order filed on November 10, 2010, Nizzo attempted to withdraw the prior stipulation regarding Wallace’s being in the course and scope of her employment with Renal Care Group at the time of the altercation.
| ¿Wallace then moved for a partial summary judgment, asserting that because *164 Nizzo had alleged in her petition and had stipulated in the previous Joint Pretrial Order that Wallace was in the course and scope of her employment at the time of the altercation, had prosecuted her case according to that legal position, and had settled her claims with defendants Renal Care Group and Zurich based upon that legal premise, and further because the parties had relied upon that stipulation, she was now precluded from withdrawing it.[4] The trial court agreed and granted partial summary judgment on that issue on February 4, 2011.
After the partial summary judgment was granted, Wallace then moved for a second summary judgment, this time requesting a dismissal of Nizzo’s entire case against Wallace, citing the provisions of La. C.C. art. 2320 and La. R.S. 9:3921, arguing that as a matter of law, since an employer is liable in full for the torts of its employee committed during the course and scope of employment, Nizzo’s settlement and release of her claims against the employer herein, Renal Care Group, effectively extinguished any claims she might still have had against the employee herein, Wallace, notwithstanding her reservation of rights to proceed against Wallace individually. On March 1, 2011, a hearing was held on the motion for summary judgment. At the conclusion of the hearing, the trial court again agreed with Wallace and granted summary judgment in favor of Wallace, effectively dismissing Nizzo’s suit against her. This appeal followed.
| fiLAWAND ANALYSIS
Appellate courts review a district court’s grant of summary judgment de novo, viewing the record and all reasonable inferences that may be drawn from it in the light most favorable to the non-movant. Hines v. Garrett, 04-0806 (La.6/25/04), 876 So.2d 764, 765. A motion for summary judgment should be granted only if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966. In ruling on a motion for summary judgment, the judge’s role is to determine whether there is a genuine issue of triable fact with all doubts being resolved in the non-moving party’s favor. Hines, 876 So.2d at 765. A material fact is one that potentially insures or prevents recovery, affects a litigant’s ultimate success, or determines the outcome of the lawsuit. Smith v. Our Lady of the Lake Hosp., Inc., 93-2512, p. 27 (La.7/5/94), 639 So.2d 730, 751.

Review of First Summary Judgment

A judicial confession is a declaration made by a party in a judicial proceeding. That confession constitutes full proof against the party who made it. La. C.C. art. 1853. A judicial confession is a party’s express acknowledgement of the correctness of a fact or an act charged against him by his adversary. First Homestead Federal Savings and Loan Ass’n v. Coleman, 446 So.2d 551 (La.App. 3 Cir.1984). *165 The effect of a judicial confession is to waive evidence as to the subject of the admission or to withdraw the matter from issue. Cheatham v. City of New Orleans, 378 So.2d 369 (La.1979). For these effects to be imposed, however, the other party must have been led to believe the fact was not at issue or he must have relied on the statement to his detriment. Id.; Cranford v. Deshotels, 359 So.2d 118 (La.1978). Otherwise, the party making the admission can withdraw the statement. Jones v. Gillen, 564 So.2d 1274, 1279 (La.App. 5 Cir.1990), writ denied, 568 So.2d 1080 (La.1990), and rehearing denied, 568 So.2d 1081 (La.1990).
A stipulation is an agreement between the parties that establishes the existence or non-existence of facts relevant to the litigation between them. 19 La. Civ. L. Treatise, Evidence And Proof § 4.6 (2011). A stipulation has the effect of a judicial admission or confession which binds all of the parties and the court to the stipulation, if it is not prohibited by law. Id., citing R.J. D’Hemecourt Petroleum, Inc. v. McNamara, 444 So.2d 600 (La.1983); Triche v. Allstate Ins. Co., 96-575 (La.App. 1 Cir. 12/20/96), 686 So.2d 127. It sometimes is called “the highest form of proof.” See, e.g., Stelly v. Guy Scroggins, Inc., 96-401 (La.App. 3 Cir. 10/9/96), 682 So.2d 782.
Nizzo’s allegation in her supplemental and amending petition that Wallace was in the course and scope of her employment at the time of the altercation was merely just that at the time of its assertion, an allegation that still needed to be proven. The allegation became a judicial confession, however, when Wallace admitted it in her answer. Later, both Nizzo and Wallace jointly stipulated as to this fact in their Joint Pretrial Order filed on February 11, 2008. Thereafter, Nizzo settled her claims, both in workers’ compensation and in tort, against Wallace’s employer and its insurance carrier. Nizzo later sought to withdraw the stipulation and proceed against Wallace individually in tort. Wallace opposed this position, arguing that both she and Nizzo had relied upon the stipulation, which in turn produced the settlement between Nizzo and Wallace’s employer, and as such, Nizzo could not now unilaterally withdraw the joint stipulation and proceed against | «Wallace individually and now assert that she was not in the course and scope of employment at the time of the altercation.
Upon review, we find without question that both Nizzo and Wallace relied upon the judicial confession and joint stipulation. At the very least, Nizzo relied upon the judicial confession and joint stipulation to lessen her burden of proof, to enhance her settlement possibilities with the employer, and to enhance her collection opportunities from the employer and its insurer, if the matter went to judgment. Likewise, at the very least, Wallace relied upon the judicial confession and joint stipulation to enhance her defenses to the claims being made against her by Nizzo, and to enhance the possibility that her employer would be made financially responsible for payment of any judgment that Nizzo might successfully obtain against her over and above the total amount of the settlement Nizzo had reached with Renal Care Group and Zurich. As the trial court aptly put it:
Counsel, I appreciate your argument. I’m going to grant the motion, all right. I think that a party is bound by their stipulations, especially if it gains them something and there’s no doubt as to what it gained her.
If there was a calculated legal risk in doing that, I have to assume that plaintiff was aware of the risk and wanted a bird in the hand instead of, you know, a *166 risk in the bush. And that’s what she did.
We agree with the trial court’s judgment. The parties jointly stipulated that Wallace was in the course and scope of her employment at the time of Wallace’s alleged tort against Nizzo. Though this position was initially opposed by Renal Care Group and Zurich in their motion for summary judgment on this issue, notably Niz-zo vehemently opposed that motion for summary judgment, specifically arguing facts that showed that Wallace was indeed in the course and scope of her employment at the time of the altercation. The trial court denied that motion for summary judgment and the case proceeded to settlement against Renal |9Care Group and Zurich in Nizzo’s favor. We also take note of the fact that all of this took place in the same proceeding, rather than in separate proceedings. Because of the judicial confession and joint stipulation, Nizzo is now accordingly prevented from unilaterally withdrawing the judicial confession and joint stipulation she made that Wallace was in the course and scope of her employment at the time of the altercation and is now bound by its effects. As such, we find no error as a matter of law in the trial court’s grant of the partial summary judgment under review herein.

Review of Second Summary Judgment

Nizzo also appeals the trial court’s second summary judgment grant that dismissed her tort suit against Wallace individually with prejudice. Nizzo argues that the release of one solidary obligor (the employer) does not automatically result in the release of another solidary obligor (the employee). She argues that the various releases she signed in this case specifically reserve any and all rights she had against Wallace individually. She cites the case of Sampay v. Morton Salt Company, 395 So.2d 326 (La.1981) as authority for her position.
In Sampay, the Supreme Court held that the derivative nature of the employer’s liability does not preclude the plaintiff victim’s recovery against the employer even though the victim has settled with and released the employee, if the victim has reserved rights against the employer. Citing Louisiana Civil Code article 2320, the court held that an employer and an employee are not joint tortfeasors; the employer’s liability for damage occasioned by an employee is secondary or derivative in the sense that the employer is not himself a wrongdoer or tortfeasor. However, the court found that an employee and an employer are solidary obligors because they are obligated to the same thing, the total reparation |10of damages to the victim. The derivative nature of the employer’s liability is of no concern to the victim, and he can compel either the employer or the employee to compensate him for the whole of his damages. The court thus found that the victim was not precluded from recovering from the employer even though he had released the employee, where he had reserved rights to proceed against the employer.
In opposition, Wallace argues that Sam-pay is not applicable herein because in that case, the plaintiff victim settled with the employee and reserved all rights to proceed against an employer. Wallace correctly points out that this case, however, involves the opposite scenario. In this case, the plaintiff victim (Nizzo) settled fully with the employer (Renal Care Group) and reserved all rights to proceed against the employee (Wallace) individually. Thus, Wallace argues, the ruling of Sampay is not controlling herein. As set forth below, we find merit to Wallace’s arguments.
In granting the motion for summary judgment, the trial court based its ruling *167 upon its appreciation of the strong public policy behind the legal relationship between an employee and an employer and the protections granted to the employee by Article 2320. The trial court stated the following:
All right, compelling case. However, I find that the codal article [Article 2820] regarding master and servant establishes a relationship so compelling that I’m not persuaded that the defendant, or rather the plaintiff, can simply enter into a contractual arrangement whereby the employer is released based upon an apparent agreement between plaintiff and the employer that the defendant was in course and scope and leave the defendant swinging. That is so that the defendant can be held responsible for going forward with trial. I don’t believe that that’s the intent of the codal article.
Public policy in my opinion that drove that article into existence afforded protection not only to the employee for being a good employee, or perhaps a bad one, but nevertheless cloaked that employee with protection. It does not allow the defendant employer to strip that protection merely for the purpose of settling the case and |uallowing the employee to swing at the hands of fate either before a bench or before a jury.
Article 2320, relied on by the trial court, defines the relationship between an employer and an employee regarding liability for the employee’s torts committed during the course and scope of employment. It provides, in pertinent part:
Masters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed.[5]
We have found no reported cases addressing the legal effect of Article 2320 on a victim’s tort claims against an employee, who was acting within the course and scope of employment, where the victim has settled fully with the employer and has reserved all fights to proceed against the employee individually. Thus, the issue before us herein appears to be res nova.
Normally, solidary obligors have the right of contribution from one another in proportion to their virile shares. La. C.C. art. 1804. However, the relationship between the employer and employee under Article 2320 is different in that the employer’s liability does not arise from it being a tortfeasor; its liability is derivative and arises solely from its employment relationship with the tortfeasor employee. Thus, under most circumstances, unless the employer itself has been shown to be a tortfeasor, there are no virile shares; the employer is vicariously liable for the entirety of the damages owed to a victim as a result of the employee’s tort. There has been no showing in this case that the employer, Renal Care Group, was liable to the plaintiff as a tortfeasor, nor has there been any admission of fault or liability on its behalf.
| i2Upon thorough review of this matter, based on the particular facts of this case *168 and the applicable law as set forth herein, we find that irrespective of her reservation of rights to proceed against Wallace individually, by releasing Wallace’s employer, Renal Care Group, from all liability, Nizzo has effectively and for all practical purposes also released Wallace’s rights under Louisiana Civil Code article 2320 and La. R.S. 9:3921 to have her employer, Renal Care Group, be made “answerable for the damage occasioned by” its employee, Wallace, “in the exercise of the functions in which [she was] employed.” In other words, Wallace’s rights to seek indemnity and reimbursement from her employer, Renal Care Group, of any damages over and above the total amount of the settlement Nizzo had reached with Renal Care Group and Zurich ($265,696.39) that Wallace may individually be found liable to Nizzo for resulting from the altercation in question, which occurred during the course and scope of her employment, has effectively and for all practical purposes been released as a result of Nizzo’s execution of her full release of Wallace’s employer, Renal Care Group.
Accordingly, because of the clear public policy of this State as set forth in Article 2320, as recognized by the trial court, that employers are answerable for the damage occasioned by their employees in the exercise of the functions in which they are employed, we find that the trial court did not err as a matter of law in granting the second summary judgment under review herein.

CONCLUSION

For the reasons set forth above, we affirm the trial court’s grants of summary judgment herein.

AFFIRMED

. Specifically, paragraph 3 of Nizzo's First Supplemental and Amending Petition makes *163 the following allegations:
Renal Care Group is vicariously liable for the actions of and injuries caused by its employee, Phyllis Forest Wallace, under the doctrine of respondeat superior because the acts were reasonably incidental to the performance of the employee’s duties and the tortuous act was primarily employment rooted.

. The pertinent paragraph of the Joint Pretrial Order provides as follows:
"The plaintiff and defendant Wallace stipulate that the incident occurred in the course and scope of employment.”

. In her workers’ compensation settlement approval petition, Nizzo specifically reserved rights against Wallace as follows:
"Toni Nizzo specifically reserves her right to pursue her tort claim against Phyllis Forest Wallace; Wallace is excluded from this release and settlement.”
Likewise, in her general release of Renal Care Group, Nizzo specifically reserved rights against Wallace as follows:
"Furthermore, Toni Nizzo, plaintiff, reserves all rights she has or may have to proceed over and against Phyllis Forest Wallace."
Finally, in her general release of Zurich and Renal Care Group, Wallace is specifically excluded from the release.

. In her written motion for partial summary judgment, Wallace argued that as a result of Nizzo’s stipulation, she was entitled to a credit against any judgment Nizzo may obtain against her personally for up to the total amount of the settlement Nizzo had reached with Renal Care Group and Zurich ($265,-696.39). However, at the hearing on the motion for partial summary judgment, the parties mainly argued the issue of Nizzo’s right to withdraw her stipulation. The transcript of the hearing on the motion for partial summary judgment reveals that the trial court agreed with Wallace’s arguments and granted partial summary judgment to the effect that Nizzo would not be allowed to withdraw her stipulation that Wallace was in the course and scope of her employment with Renal Care Group at the time of the altercation.

. Further, La. R.S. 9:3921, provides, in pertinent part:
... [E]very master or employer is answerable for the damage occasioned by his servant or employee in the exercise of the functions in which they are employed. Any remission, transaction, compromise, or other conventional discharge in favor of the employee, or any judgment rendered against him for such damage shall be valid as between the damaged creditor and the employee, and the employer shall have no right of contribution, division, or indemnification from the employee nor shall the employer be allowed to bring any incidental action under the provisions of Chapter 6 of Title I of Book II of the Louisiana Code of Civil Procedure against such employee.