DIAMOND FIELDS AND GERALD SANFORD

VERSUS

OCHSNER MEDICAL CENTER - KENNER,

L.L.C., ET AL

NO. 22-C-64

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

*Susan S. Buchholz*
First Deputy, Clerk of Court

May 11, 2022

Susan Buchholz
First Deputy Clerk

**IN RE** DIAMOND FIELDS AND GERALD SANFORD

**APPLYING FOR** SUPERVISORY WRIT FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT, PARISH OF JEFFERSON, STATE OF LOUISIANA, DIRECTED TO THE HONORABLE JUNE B. DARENSBURG, DIVISION "C", NUMBER 813-278

Panel composed of Judges Robert A. Chaisson,
Stephen J. Windhorst, and John J. Molaison, Jr.

**WRIT GRANTED**

In this case arising from the alleged mishandling and mislocation of a stillborn child's remains, the child's parents, Diamond Fields and Gerald Sanford, seek supervisory review of the trial court's denial of their Motion to Compel Discovery, which seeks, *inter alia*, responses to interrogatories asking Ochsner Medical Center - Kenner, L.L.C., to identify any known witnesses to the loss of the child's remains or the events leading up to or immediately after the loss. For the following reasons, we grant this writ, vacate the decision of the trial court, and remand with instructions.

In their petition for damages filed on February 19, 2019[1], relators allege the following facts:

---

[1] This petition was amended on July 26, 2021 to add as defendant Joel Alexander, a security officer employed by Ochsner Medical Center - Kenner.

22-C-64

On or about April 26, 2018, Ms. Fields gave birth to her stillborn daughter, Nalini Nahla Sanford, at Ochsner Medical Center. Postpartum, Ms. Fields and Mr. Sanford were given the opportunity to spend the next 24 hours bonding with their daughter and grieving her death. Ochsner provides parents in similar situations with a complimentary funeral service to memorialize the death of their children. Ms. Fields and Mr. Sanford decided to accept Ochsner's services instead of arranging their own memorial/funeral service on Nalini's behalf. Ms. Fields was eventually released from Ochsner's care and returned home to Baton Rouge, Louisiana. The memorial/funeral service was scheduled for May 30, 2018, which was a little over a month after Ms. Fields had been released from the hospital. Sometime during that period of time, Nalini's stillborn body was misplaced by Ochsner personnel and her remains were never located. On the morning of May 30, 2018, the day on which the parents and family of Nalini Nahla Sanford were to attend the memorial/funeral service, Ms. Fields received a phone call from a representative of Ochsner informing her that they had lost Nalini's body and her remains could not be located. To this date, the body has not been located and the whereabouts of her remains are unknown.

Ochsner has not yet filed an answer to this petition, either admitting or denying any of the relator's allegations.[2] It first filed a declinatory exception of improper venue, which was granted and the case was transferred from the 19th Judicial District Court in the Parish of East Baton Rouge to the 24th Judicial District Court in the Parish of Jefferson. Ochsner then filed a dilatory exception of prematurity arguing that relator's claims fell under the Louisiana Medical Malpractice Act and needed to be first reviewed by a Medical Review Panel for decision prior to filing a lawsuit. The trial court granted this exception, however,

_____

[2] It is unclear whether the trial court has granted respondents additional time for answering pursuant to La. C.C.P. art. 1001.

2

this Court, upon *de novo* review, determined that relator's claims are not covered by the LMMA. *Fields v. Ochsner Med. Ctr. - Kenner, L.L.C.*, 21-481 (La. App. 5 Cir. 8/20/21), *writ denied*, 21-01408 (La. 11/23/21), 328 So.3d 85.

On December 13, 2021, relators filed a Motion to Compel Discovery seeking complete responses to the First Set of Interrogatories and First Set of Requests for Production of Documents, which were served on June 14, 2019. In particular, relators argue that Ochsner has failed to provide complete responses to interrogatories seeking the identity of witnesses to the incident, the identity of any persons or companies who have conducted an investigation of the incident, and more.

In opposition to the motion, Ochsner argues that it has provided sufficient responses to the requests and interrogatories, that the information relators seek is unavailable or protected by waivable attorney-client and work product privileges or La. R.S. 13:3715.3.

Prior to the hearing on the motion to compel, Ochsner filed a "Stipulation of Responsibility" that states in its entirety, "NOW INTO COURT, through undersigned counsel, comes Ochsner Medical Center-Kenner, LLC ("Ochsner"), for the purpose of stipulating that it is solely responsible for the inability to locate the deceased body of Nalini Nahla Sanford." Ochsner argues that, because of this stipulation, information sought by relators is no longer relevant because the stipulation has the effect of rendering moot all factual questions as to how the child's remains were lost, who was involved, and what or when Ochsner knew about the incident, thereby making the only relevant information the quantum of damages suffered by the parents.[3]

---

[3] In their response to this writ application, Ochsner maintains that any pain and suffering experienced by the parents has been caused by their child being stillborn, rather than Ochsner's alleged loss of her remains.

3

At the hearing on the Motion to Compel, the trial court accepted Ochsner's stipulation and denied relators' motion. The trial court did not at that time consider the arguments concerning privilege or the application of La. R.S. 13:3715.3. This timely writ application followed.

**DISCUSSION**

In ruling on discovery matters, the trial court is vested with broad discretion and, upon review, an appellate court should not disturb such rulings absent a clear abuse of discretion. *Khoobehi Props., LLC v. Baronne Dev. No. 2, L.L.C.*, 16-506 (La. App. 5 Cir. 03/29/17), 216 So.3d 287, 303. However, if the trial court's decision was based on its erroneous interpretation or application of law rather than a valid exercise of discretion, such an incorrect decision is not entitled to deference. *Lagraize v. Basler*, 20-39 (La. App. 5 Cir. 9/9/20), 304 So.3d 102, 113, *writ denied*, 20-01257 (La. 12/22/20), 307 So.3d 1038 (citing *Kem Search, Inc. v. Sheffield*, 434 So.2d 1067 (La.1983)).

The primary legal question before us in this writ application is the legal effect of Ochsner's "Stipulation of Responsibility." A stipulation is an agreement between the parties that establishes the existence or non-existence of facts relevant to the litigation between them. *Nizzo v. Wallace*, 11-467 (La. App. 5 Cir. 12/28/11), 83 So.3d 161, 165, *writ denied*, 12-0042 (La. 3/9/12), 84 So.3d 556.[4] As made clear by relators, the adverse parties here have not entered into any kind of voluntary agreement concerning the facts alleged in their petition. The pleading was filed unilaterally, without knowledge of relators' council shortly before the hearing on the motion to compel. To call it a "stipulation" is incorrect, caption notwithstanding, and, to the extent this pleading is represented as having the same legal effect as one of the ubiquitous genuine voluntary agreements made by parties

---

[4] A "stipulation" is a voluntary agreement between opposing parties concerning some relevant point or an agreement relating to a proceeding made by attorneys representing adverse parties. STIPULATION, Black's Law Dictionary (11th ed. 2019).

in courts as a matter of common practice, misleading. *See Jackson v. Underwriters at Lloyd's of London*, 21-15 (La. App. 5 Cir. 9/29/21), 329 So.3d 1029, 1044, *writ denied*, 21-01591 (La. 1/12/22), 330 So.3d 617.

This pleading should instead be understood as an attempted "judicial admission" or "judicial confession." Under La. C.C. art. 1853, a judicial confession is a declaration made by a party in a judicial proceeding. The confession constitutes full proof against the party who made it. *Id.* A judicial confession is a party's explicit admission of an adverse factual element; it has the effect of waiving evidence as to the subject of the admission or to withdraw the matter from issue. *Crawford v. Deshotels*, 359 So.2d 118, 122 (La. 1978) For these effects to be imposed, however, the other party must have been led to believe the fact was not at issue or he must have relied on the statement to his detriment, otherwise the party making the admission can withdraw the statement. *Colbert v. B.F. Carvin Const. Co.*, 600 So.2d 719, 727 (La. Ct. App. 1992), (citing *Jones v. Gillen*, 564 So.2d 1274, 1279 (La. App. 5th Cir.1990)). To constitute a judicial confession, the statement must be the express acknowledgment of an adverse fact. *Hayes v. Air & Liquid Sys. Corp.*, 54,017 (La. App. 2 Cir. 8/11/21), *writ denied*, 21-01387 (La. 11/23/21), 328 So.3d 83.

Ochsner's purported judicial confession does not expressly or explicitly acknowledge the adverse factual elements set forth in relators' petition. As worded, to claim to be responsible for the inability to locate the child's remains is not even an admission that they are responsible for losing them. "We cannot find the child's body" and "we lost the child's body" are not equivalent, and it is understandable why the parents would refuse to rely on this statement to their detriment. Defendant's pleading therefore fails to meet the standard for a judicial confession set forth in La. C.C. art. 1853, and has none of the legal effects that

5

come from those confessions which expressly acknowledge adverse factual elements set forth in relators' petition.

As Ochsner pointed out in their opposition, there are many ways a party may resolve factual disputes prior to trial: the defendant filing an answer to the petition (La. C.C.P. art. 1003), admissions in response to discovery requests (La. C.C.P. arts. 1467-68), or by making an offer of judgment (La. C.C.P. art. 970). Ochsner has availed itself of none of these.

Ochsner also argues that the evidence sought by relators should be excluded pursuant to La. C.E. art. 403, which provides that relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or waste of time. This is a remarkable argument to make considering that Ochsner, which has conducted two internal investigations into the incident, is the only participant in this suit to have seen the evidence in question, and has yet to file an answer to relators' petition filed more than three years ago.

Concerning the admissibility of evidence under La. C.E. art. 403, an offer by counsel to stipulate to the facts sought to be proven by contested evidence does not necessarily preclude the opponent from offering evidence to establish such facts. For example, offering to stipulate that the decedent was dead and how he came to his demise has been held not to preclude the prosecution from introducing photographs of the dead victim. *State v. Perry*, 502 So.2d 543, 559 (La. 1986). The Louisiana Supreme Court has held that forcing the prosecution to accept a defendant's stipulation frustrates the general rule that the prosecution is entitled to prove its case by evidence of its own choice. *State v. Ball*, 99-0428 (La. 11/30/99), 756 So.2d 275, 280 (citing *Old Chief v. United States*, 519 U.S. 172, 189, 117 S.Ct. 644, 654, 136 L.Ed.2d 574 (1997)). We recognize here too relators' rights to prove their case to the jury by evidence of their own choosing.

6

Finally, Ochsner also characterizes relators' motion to compel as an abuse of the discovery process. As the Louisiana Supreme Court has recently stated:

> A basic premise of our system of justice is that both sides to a dispute stand on equal footing in gathering evidence and preparing for trial. The discovery rules are not ends in themselves, but are meant to aid in the search for the truth. … To that end, this Court has previously summarized the objectives of the Louisiana discovery process as affording all parties a fair opportunity to obtain facts pertinent to the litigation, discovering the true facts and compelling disclosure of these facts wherever they may be found, and assisting litigants in preparing their cases for trial. Discovery statutes are to be liberally and broadly construed to achieve their intended objectives.

*Hicks v. USAA Gen. Indem. Co.*, 21-0840 (La. 3/25/22) (citations omitted).

We find that relators' motion to compel, filed by parents seeking something as simple as the identity of any witnesses who have knowledge about what happened to the loss of their child's remains, is not an abuse of the discovery process.

*La. R.S. 13:3715*

Ochsner has claimed that the documents requested by the plaintiffs are protected by the Louisiana Peer Review Statute, La. R.S. 13:3715.3 and that the Louisiana Supreme Court's decision in *Smith v. Lincoln General Hospital*, 605 So.2d 1347 (La. 1992) has been legislatively overruled by the subsequent amendment of La. R.S. 13:3715.3.

In *Smith*, the Louisiana Supreme Court stated:

> [La. R.S. 13:3715 and 44:7] are intended to provide confidentiality to the records and proceedings of hospital committees, not to insulate from discovery certain facts merely because they have come under the review of any particular committee. Such an interpretation could cause any fact which a hospital chooses to unilaterally characterize as involving information relied upon by one of the sundry committees formed to regulate and operate the hospital to be barred from an opposing litigant's discovery regardless of the nature of that information. Such could not have been the intent of the legislature, especially in light of broad scope given to discovery in general. La. C.C.P. art. 1422. Further, privileges, which are in derogation of such broad exchange of facts, are to be strictly interpreted.
> …

7

> [W]hen a plaintiff seeks information relevant to his case that is not information regarding the action taken by a committee or its exchange of honest self-critical study but merely factual accountings of otherwise discoverable facts, such information is not protected by any privilege as it does not come within the scope of information entitled to that privilege.
>
> This does not mean that the plaintiff is entitled to the entire study, as such study may contain evidence of policy making, remedial action, proposed courses of conduct, and self-critical analysis which the privilege seeks to protect in order to foster the ability of hospitals to regulate themselves unhindered by outside scrutiny and unconcerned about the possible liability ramifications their discussions might bring about. As such, the trial court must make an *in camera* inspection of such records and determine to what extent they may be discoverable.

*Smith*, 605 So.2d at 1348.

At the time the *Smith* decision was rendered, La. R.S. 13:3715.3 protected "the records and proceedings" of peer review committees from disclosure. In 1993, subsequent to the *Smith* decision, the Louisiana Legislature amended the statute to read "… all records, notes, data, studies, analyses, exhibits, and proceedings," are protected from disclosure. It is this language that respondents rely upon in arguing that the Court's holding in *Smith* has been legislatively overruled and that no information contained within peer review records is discoverable.

However, subsequent to the amendment of La. R.S. 13:3715.3, the Louisiana Supreme Court rendered decisions in *Gauthreaux v. Frank*, 95-1033 (La. 6/16/95), 656 So.2d 634 and *Sepulvado v. Bauman*, 99-3326 (La. 12/17/99), 753 So.2d 207. In *Gauthreaux*, the Court stated, "[i]n the present case, the trial court interpreted La. R.S. 13:3715.3 as protecting from discovery any information passing before a hospital committee or otherwise discussed in a committee meeting. Such a reading of the peer review committee privilege is clearly too expansive in light of our decision in *Smith* …" and proceeded to then instruct the trial court to re-examine, *in camera* if necessary, the discovery requests made by the plaintiff to determine whether or not each item of information sought from the medical center defendant

8

is protected by the privilege created by the statute. The Court repeated these instructions in *Sepulvado,* a similar discovery dispute case, where the Court, citing *Smith*, remanded the case to the trial court with instructions to conduct an *in camera* inspection of all materials requested by the plaintiffs which the defendants claimed were protected under the statutory privilege.

The peer review privilege is not a blanket protection for *all* documents included in an internal peer review. The *in camera* review process necessarily ensures that the hospital/healthcare provider has not claimed as privileged, documents and factual information that, for whatever reason, is unavailable through the ordinary process of discovery. That the legislature intended for the same factual information and documentation used by the peer review committee for its own internal analysis to be available to a litigant in the normal course of discovery is indicated by the exception stated in the statute:

> [N]o original record or document, which is otherwise discoverable, prepared by any person, other than a member of the peer review committee or the staff of the peer review committee, may be held confidential solely because it is the only copy and is in the possession of a peer review committee.

La. R.S. 13:3715.3(A)(2).

Such an interpretation is additionally consistent with our rules of evidence which allow for broad discovery and require the narrow construction of statutes granting privilege. Because it is clear from the hearing transcript that the trial court did not conduct an *in camera* review of the peer review documentation, we remand this matter with instructions that the trial court conduct an *in camera* review of the peer review documentation, according to law, utilizing the following procedure.

Respondents shall produce to the trial court, for *in camera* review, the peer review documentation responsive to the discovery requests in its entirety, with proposed redactions of the analysis and conclusions of the peer review panel

claimed to be privileged. As to any purely factual information available to relators through other means of discovery, respondents shall provide a statement indicating where and how such information is otherwise available to relators. After conducting an *in camera* review of the peer review documentation, the trial court should render judgment either denying the motion to compel and clearly stating that the documents and information sought are protected by the statutory privilege under La. R.S. 13:3715.3 and contain no factual accountings or documentation otherwise unavailable through ordinary discovery, or it should render judgment granting the motion to compel and clearly indicating which documents are to be produced, either in their entirety or with redactions, and providing respondents the opportunity to seek supervisory review of that determination prior to production of those documents to relators.

**CONCLUSION**

Upon *de novo* review, we find that the trial court legally erred in acknowledging and giving legal effect to defendant's so-called "Stipulation of Liability." We find this pleading is neither a stipulation voluntarily entered into by the parties nor a judicial confession that explicitly acknowledges adverse facts set forth in relators' petition. We therefore vacate the ruling of the trial court. We remand this matter to the trial court with instructions to reconsider relators' Motion to Compel and to review those documents that Ochsner claims are protected by La. R.S. 13:3715 in accordance with the procedure for *in camera* review set forth herein.

Gretna, Louisiana, this 11th day of May, 2022.

**RAC**
**SJW**
**JJM**

10

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

MARY E. LEGNON
INTERIM CHIEF DEPUTY CLERK

SUSAN S. BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF DISPOSITION CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE DISPOSITION IN THE FOREGOING MATTER HAS BEEN
TRANSMITTED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 4-6** THIS
DAY **05/11/2022** TO THE TRIAL JUDGE, THE TRIAL COURT CLERK OF COURT, AND AT LEAST ONE OF
THE COUNSEL OF RECORD FOR EACH PARTY, AND TO EACH PARTY NOT REPRESENTED BY
COUNSEL, AS LISTED BELOW:

**22-C-64**

*Curtis B. Pursell*

**CURTIS B. PURSELL**
CLERK OF COURT

### E-NOTIFIED

24th Judicial District Court (Clerk)
Honorable June B. Darensburg (DISTRICT JUDGE)
David L. Bateman (Relator)
Nadia M. de la Houssaye (Respondent)

### MAILED

J. Michael McDonald (Relator)
Attorney at Law
6700 Jefferson Highway
Building 3
Baton Rouge, LA 70806